**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ROGER WILLIAMS, et al.

CIVIL ACTION

VERSUS

24-1014-SDD-RLB

NORTH LIGHT SPECIALTY
INSURANCE COMPANY

**RULING**

Before the Court is the *Motion for Summary Judgment*[1] filed by Defendant North

Light Specialty Insurance Company ("Defendant" or "North Light").   Plaintiffs Roger

Williams ("Mr. Williams") and Anne Williams ("Mrs. Williams") (collectively "Plaintiffs") filed

an *Opposition*,[2] to which North Light filed a *Reply*.[3]  The Court has considered the parties'

submissions, arguments, and applicable law, and is prepared to rule.  For the reasons

that follow, the *Motion* will be DENIED in part and GRANTED in part.

**I.     LOCAL RULE 56**

Parties are required, and expected, to comply with the Local Rules of the Middle

District of Louisiana in filing and opposing motions for summary judgment.  Local Rule

56(c) provides that a party opposing a motion for summary judgment is required to "submit

with its opposition a separate, short, and concise statement of material facts" that admits,

denies, or qualifies the facts set forth in the moving party's statement of material facts.[4]

Facts contained in a supporting or opposing statement of material facts, if supported by

---

[1] Rec. Doc. 16.
[2] Rec. Doc. 22.
[3] Rec. Doc. 25.
[4] M.D. La. Local Rule 56(c).  Local Rule 56(b)(1) provides that "[a] motion for summary judgment shall be supported by a separate, short, and concise statement of material facts … as to which the moving party contends there is no genuine issue of material fact to be tried."

1

specific record citations, are deemed admitted "unless properly controverted."[5]  Thus, a nonmovant who fails to strictly comply with Local Rule 56(c) "does so at [their] own peril."[6]

Here, North Light filed with its summary judgment motion a *Statement of Undisputed Facts*.[7]  In response, Plaintiffs filed an *Statement of Contested Material Facts*.[8]  Plaintiffs' submitted statement, however, did not "admit, deny, or qualify the facts by reference to each numbered paragraph of [North Light's] statement of material facts[,]" as is required by Local Rule 56(c).  According to the rules, the uncontroverted facts offered by North Light are thus deemed admitted by this Court for purposes of this motion. That said, the Court may, in its discretion, overlook a party's noncompliance if to do so would promote the orderly and expeditious handling of the case.[9]  Instructively, another section of this Court explained in *Braud v. Wal-Mart Stores, Inc.* that "case law recognizes [] the Court can still consider record evidence to determine if there is a factual dispute."[10]

In the instant matter, despite Plaintiffs' failure to strictly comply with Local Rule 56(c), the facts at issue are clearly presented in their opposition and, in any event, easily ascertainable by comparing the parties' competing statements of undisputed facts.  The Court therefore finds that the intended purpose of Rule 56(c) was achieved here by an alternative, albeit nonconforming, means.  "To the extent Plaintiffs have directed the Court

---

[5] M.D. La. Local Rule 56(f).

[6] *Deggs v. Aptim Maintenance, LLC*, 2022 WL 2351922, at *1 n.2 (M.D. La. June 29, 2022) (internal quotation marks and citation omitted).

[7] Rec. Doc. 16-2.

[8] Rec. Doc. 22-1.

[9] *Berry v. Williams*, 2022 WL 2073079, at *5 (M.D. La. May 23, 2022) (quoting *Howlink Glob. LLC v. Centris Info. Servs., LLC*, 2015 WL 216773, at *3 (E.D. Tex. Jan. 8, 2015) ("Courts have broad discretion to determine how and when to enforce the local rules, and when to pardon noncompliance.").

[10] 2019 WL 3364320, at *4 (M.D. La. July 25, 2019) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 910 (5th Cir. 1998) (holding, where plaintiff failed to oppose the motion for summary judgment, that facts in "Statement of Undisputed Facts" were admitted, "except to the extent that the 'facts' in the 'Statement of Undisputed Facts' are contradicted by 'facts' in other materials attached to his motion for summary judgment.").

to specific, countervailing summary judgment evidence demonstrating genuine disputes of material fact in this matter, the Court will consider [the] same."[11]   Nevertheless, Plaintiffs and their counsel are admonished to follow all local rules in future filings.

## II.     BACKGROUND

This lawsuit arises in connection with damages to the roof and interior of Plaintiffs' residence at 11888 River Highlands Drive in Saint Amant, Louisiana (the "Property"), which they attribute to a wind and hailstorm (the "Windstorm") that occurred on September 8, 2023.[12]   At the time of the Windstorm, the Property was covered by a homeowner's insurance policy issued by North Light (the "Policy") on November 15, 2022.[13]   Plaintiffs allege that North Light subsequently "breached the Policy and/or insurance contract by … failing to timely tender proceeds due after having received satisfactory proof of loss" for the above-mentioned Windstorm damages.[14]   Plaintiffs accordingly seek recovery of insurance proceeds and bad faith penalties against North Light.[15]

North Light contends it is entitled to summary judgment on Plaintiffs' breach of contract claim because they have failed to provide sufficient proof that the asserted uncompensated damages occurred as the result of the Windstorm or any other covered peril.  More specifically, it attacks the sufficiency of the Plaintiffs' offered expert report, claiming it (1) "does not state that the sued upon September 8, 2023, storm was the cause of the observed damage,"[16] and (2) "does not rule out that more than one storm cause[d]

---

[11] *Irving v. Georgia-Pacific Corp.*, 2021 WL 2447230, at * 1 (M.D. La. June 15, 2021).
[12] Rec. Doc. 1-1, ¶¶ 6-7.
[13] Rec. Doc. 16-4, ¶ 4.
[14] Rec. Doc. 1-1, ¶ 29.
[15] *Id.* at p. 9-10.
[16] Rec. Doc. 16-1, p. 3.

the damages claimed."[17]  Similarly, it contends that Plaintiffs' offered expert loss estimate "does not address the link between the claimed [Windstorm] with the estimate."[18] Considering these alleged deficiencies in Plaintiffs' case, North Light directs the Court's attention to the report of its own expert, Vernon Moore of SDII Global, LLC ("SDII"), who, following an August 2024 inspection of the property, concluded: "the damage observed to the [roof over the residence] … was due to wind-related forces during the passage of Hurricane Ida," which occurred in August 2021.[19]  North Light therefore maintains that the asserted damages predate the inception of the Policy and, given Plaintiffs' purported failure to show otherwise, their contractual claims must fail.[20]

North Light next argues that "[a]bsent a valid underlying claim for breach of contract, there is no cause of action" for statutory bad-faith penalties.[21]  Alternatively, North Light contends that even if a valid contractual claim is found to exist, Louisiana law allows insurers to litigate "questionable claims without being subjected to [bad faith] damages and penalties."[22]   Because it has provided evidence that the sued upon damages predate the Policy inception date, North Light contends it has a reasonable basis to dispute Plaintiffs' claims and any bad faith claims should be dismissed.[23]

## III.    LAW AND ANALYSIS

### A. Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment

---

[17] *Id.* at p. 7.
[18] *Id.* at p. 6.
[19] *Id.* at p. 2 (citing Rec. Doc. 16-4, p. 48, 61 (Exhibit B)).
[20] Rec. Doc. 16-1, p 7.
[21] *Id.* at p. 8 (internal citations omitted).
[22] *Id.* at p. 10 (internal citations omitted).
[23] *Id.*

as a matter of law.[24]   This determination is made "in the light most favorable to the opposing party."[25]   "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."[26]   If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[27]   However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[28]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[29]   All reasonable factual inferences are drawn in favor of the nonmoving party.[30]   However, "[t]he Court has no duty to search the record for material fact issues.   Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[31]   "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment."[32]

---

[24] Fed. R. Civ. P. 56(a).

[25] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

[26] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 333–34 (1986)).

[27] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).

[28] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

[29] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson*, 477 U.S. at 248)).

[30] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (citing *Hodges v. Exxon Corp.*, 727 F.2d 450, 452 (5th Cir. 1984)).

[31] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citing *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998)).

[32] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).

## B. Contractual Claims

Because North Light primarily disputes whether a genuine issue of material fact exists over the cause of Plaintiff's asserted property damage, the Court notes from the outset that "causation is a question not particularly suited to resolution on motions … for summary judgment."[33]  This is especially true where, as here, the crux of North Light's argument is that "Plaintiffs have failed to provide expert proof that the wind damage … was causally due to the September 8, 2023, sued upon storm event."[34]  While North Light correctly notes that "the insured must carry the burden of persuasion to establish that any uncompensated [] damage was caused by a covered peril[,]" it cites no authority to support the broader proposition that its argument invites: that without expert testimony on the issue of causation, Plaintiffs' contractual claim must fail as a matter of law.[35]  Not so.

A party asserting that a fact is genuinely disputed has an arsenal of options under Federal Rule of Civil Procedure 56(c) by which it may do so, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers," in addition to a catch all of "other material."[36] Certainly, "[s]worn deposition testimony constitutes competent summary judgment evidence."[37]  Here, Mr. Williams testified in his deposition that he did not observe any water intrusion or related interior damage following the passage of Hurricane Ida on August 29, 2021.[38]  He also stated unequivocally that the first time he noticed any water

---

[33] *Duhe v. Delta Air Lines, Inc.*, 635 F. Supp. 1414, 1416 (E.D. La. 1986).

[34] Rec. Doc. 16-1, p. 7.

[35] *Id.* at p. 6 (citing *Jones v. Estate of Santiago*, 870 So.2d 1002, 1010 (La. 2004)).

[36] FED. R. CIV. P. 56(c).

[37] *Wilkins v. Liberto*, 2022 WL 2315890, at *4 n.6 (E.D. La. June 28, 2022); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 725 (5th Cir. 2020) ("Rule 56 allows the use of deposition testimony to show that a fact is genuinely disputed.").

[38] Rec. Doc. 22-2, p. 5 (p. 107:3-22, R. Williams July 25, 2025, deposition transcript).

damage or infiltration was on September 8, 2023, as the Windstorm was occurring—he also described with specificity the conditions he observed inside the residence that day.[39] A party's sworn deposition testimony, based on personal knowledge and containing factual assertions, "suffices to create a fact issue" and defeat summary judgment, even if it is self-serving.[40] Here, Mr. Williams' deposition testimony sets out particularized facts,[41] based on personal observation, supporting the Windstorm as the source of the sued upon damages and directly contradicts North Light's attempt to attribute the same to Hurricane Ida—as would obviate its liability under the Policy.[42] Construing all reasonable inferences in Plaintiffs' favor, the Court concludes that, if the version of facts set forth by Mr. Williams' testimony is to be believed, a reasonable jury could return a verdict in their favor on the contract claim.[43] Thus, a genuine issue of material fact exists as would preclude summary

---

[39] *Id.* at p. 2 (pp. 15:18-23 & 16:1-25, R. Williams July 25, 2025, deposition transcript).

[40] *Parkman v. W&T Offshore, Inc.*, 544 F. Supp. 3d 642, 650 (M.D. La. 2021) (internal citation omitted); *see TMJ Group LLC v. IMCMV Holdings Inc.*, 311 F. Supp. 3d 834, 849-50 (E.D. La. 2018) (citing *Vetter v. Frosch*, 599 F.2d 630 (5th Cir. 1979) (Recognizing that unlike self-serving affidavits—which the Fifth Circuit has repeatedly held are insufficient, without more, to defeat a motion summary judgment—"a nonmovant's deposition testimony is often considered by a court in … preclud[ing] summary judgment."); *Osteen v. Fed. Ins. Co.*, 2025 WL 3250885, at *5 (E.D. La. Nov. 20, 2025) ("Plaintiff's testimony in her deposition creates a genuine issue of material fact that must be resolved at trial."); *Cole v. Quality Carriers Inc.*, 2023 WL 4494389, at *6 (W.D. La. July 11, 2023) ("a party's own deposition can be sufficient evidence at summary judgment … [even if] self-serving"); *F.D.I.C. v. National Union Fire Ins. Co.*, 1993 WL 515799, at *3 (E.D. La. Dec. 7, 1993) (Denying summary judgment where deposition testimony created a genuine issue of material fact).

[41] Mr. Williams' deposition testimony does not merely set forth "ultimate or conclusory facts" as would be "insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997). Instead, it recounts, in detail, the conditions that Mr. Williams observed on the Property as the Windstorm was occurring and provides a basis from which a reasonable jury can conclude that the sued upon damages originated from a covered weather event under the Policy. Rec. Doc. 22-2, p. 2 (pp. 16:5-17:25, R. Williams July 25, 2025, deposition transcript). This is sufficient to defeat summary judgment. *See, e.g.*, *Zhan v. Cnty of Cook*, 2007 WL 1031175, at *2 n.2 (N.D. Ill. Mar. 28, 2007) (citing *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) ("[I]t is well-settled that a plaintiff's deposition testimony is sufficient to defeat summary judgment so long as it is based on personal knowledge and it is non-conclusional.").

[42] *See Ill. Cent. R.R. Co. v. Harried*, 681 F. Supp. 2d 772, 775 (S.D. Miss. 2009) ("[A] genuine issue of material fact is obviously present where one party testifies to one account of the matter in interest and the other party swears otherwise.") (internal citations omitted).

[43] The jury has "great discretion" to credit Mr. Williams' competent testimony supporting Plaintiffs' version of events over the conflicting version presented by North Light's expert. *See Thistlethwaite v. Gonzalez*, 106 So. 3d 238, 254 (La. App. 5th Cir. 2012). The Court also notes that Plaintiffs have designated two

judgment in North Light's favor.[44]

North Light's suggestion that the factual assertions in Mr. Williams' deposition testimony are contradicted by a July 10, 2025 interrogatory answer in which Plaintiffs represented they could not "specifically recall the date that they first noticed the roof damage and interior water damage," does not require a different result.[45]  The Court acknowledges that this inconsistency might raise a question concerning Mr. Williams' credibility on a central aspect of Plaintiffs' claim.  But "it is the job of a jury, not the Court on a summary judgment motion, to measure and resolve weaknesses, inconsistencies and even contradictions in a witness's testimony."[46] Indeed, courts "may not make credibility determinations or weigh the evidence" when deciding a motion for summary judgment.[47]  In line with this principle, the Court finds that Plaintiffs have provided sufficient evidence attributing the claimed damages to the Windstorm to establish a genuine issue of material fact that must be resolved at trial.

Summary judgement is thus inappropriate and North Light's *Motion for Summary Judgment*[48] on Plaintiffs' contract claims is DENIED.

---

experts, Brian Heyse of Superior Group Roofing & Design, LLC, and David V. Day, P.E. of CASA Engineering, in support of their claims.  Rec. Doc. 18-2, p.1.  In conjunction with its *Motion for Summary Judgment*, however, North Light also filed *Motions in Limine* to strike Plaintiffs' experts and to exclude their report and estimate of damages, respectively.  Rec. Docs. 17 and 18.  Because Mr. Williams' deposition testimony is sufficient to establish a genuine issue of material fact concerning the source of the Plaintiffs' alleged property damage, the Court declines—at this juncture—to evaluate the substance of the proffered opinions of Plaintiffs' designated experts.  Accordingly, Defendant's *Motions in Limine* are not dealt with in this Ruling, as it not necessary for the Court to address them to resolve the instant *Motion for Summary Judgment*.

[44] *Pylant*, 497 F.3d at 538 (quoting *Anderson*, 477 U.S. at 248) ("[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"); *Osteen*, 2025 WL 3250885, at *5.

[45] Rec. Doc. 16-1, pp. 3, 7.  The interrogatory response at issue can be found at Rec. Doc. 16-3, p. 12.

[46] *Millien v. Walmart, Inc.*, 2024 WL 4127558, at *6 (M.D. La. Sep. 9, 2024).

[47] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[48] Rec. Doc. 16.

### C.  Bad Faith Claim

As an initial matter, considering the Court has denied North Light's motion for summary judgment on Plaintiffs' contract claim, its argument that because "Plaintiffs cannot succeed in their breach of contract claim … [they] cannot succeed in [their] bad faith claim" is unavailing.[49]  The Court therefore only considers North Light's contention that because it harbored legitimate doubts about the cause of Plaintiffs' loss and its corresponding liability under the Policy, it "has the right to litigate these [issues] … without being subjected to damages and penalties."[50]

Plaintiffs bring their claims against North Light for bad faith processing of an insurance claim under Louisiana Revised Statute §§ 22:1892 and 22:1973.[51]  The former

---

[49] Rec. Doc. 16-1, p. 10.

[50] *Id.* (internal citations omitted).

[51] Rec. Doc. 1-1, ¶ 36.  The Court notes that Louisiana's bad faith statutes were amended in 2024.  As a result of the amendments, La. R.S. § 22:1973 was repealed, and § 22:1982 significantly amended, effective July 1, 2024.  *See* Act. No. 3 of the 2024 Regular Session, La. State Sen. Bill No. 232.  The parties do not address what effect, if any, this has on the present litigation.  However, in Louisiana, "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only." La. Civ. Code art. 6; *see Bourgeois v. A.P. Green Indus., Inc.*, 783 So. 2d 1251, 1257 (La. 2001).  Because there no legislative expression in the Act to make it retroactively applicable; because § 22:1973 is a substantive law; and because another Court in this Circuit has already made an *Erie* guess that its repeal applies prospectively, the Court concludes that § 22:1973 and the prior version of § 22:1982 apply.  To be sure, the instant action was initiated on November 8, 2024, after the effective date of Act No. 3.  Rec. Doc. No. 1-1, p. 6.  But at least one district court has suggested the date of loss determines whether the Court can apply Louisiana's pre-amendment bad faith statutory scheme.  *See Arnaud v. State Farm Fire and Cas. Co.*, 2026 WL 1080391, at *3 n. 2 (W.D. La. Apr. 21, 2026) ("La. R.S. § 22:1973 has since been repealed but was in effect when the [loss] occurred.").  Here, that would be September 8, 2023—well before the effective date of Act No. 3.  The same outcome would result if the Court considered the date the Plaintiffs' causes of action first accrued—that is, when the right to institute and maintain a lawsuit arose.  *See Louette v. Security Industrial Insurance Co.*, 361 So.2d 348, 1350 (La. App. 3d Cir.), *writ denied* 364 So.2d 564 (La. 1978).  Relevant here, "[a] plaintiff's cause of action … arise[s] … when the plaintiff provides satisfactory proof of loss and the defendant fails to pay." *Hartenstein v. State Fair Fire and Cas. Ins. Co.*, 2008 WL 2397713 at *4 (E.D. La. June 10, 2008) (internal citations omitted);  *see Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 206 (La. 2008)).  Plaintiffs contend they submitted a satisfactory proof of loss on December 19, 2023.  North Light thereafter had thirty (30) and sixty (60) days under § 22:1982 and § 22:1973, respectively, to tender payment before liability for bad faith damages and penalties would arise.  Plaintiffs' causes of action would have accrued on January 18 and February 17, 2024, accordingly.  It is clear, then, that all the events or facts essential facts giving rise to the Plaintiffs' bad faith claims occurred well before the legislature's amendments went into effect on July 1—it is irrelevant that additional acts of bad faith are alleged to have occurred after that date.  In any event, the pertinent language of the penalty provisions and the enumerated duties of insurers under § 22:1973—including that of good faith—transferred and were incorporated into

provides that an insurer has a duty to "pay the amount of any claim due an insured <u>within</u> <u>thirty day</u>s after receipts of satisfactory proofs of loss from the insured."[52]    Under its provisions, a failure to pay that is "arbitrary, capricious, or without probable cause" renders an insurer liable for the resulting damages and for a statutory penalty, attorney's fees, and costs.[53]    Similarly, § 22:1973 provides that an insurer may be held liable for "[f]ailing to pay the amount of any claim due any person insured by [a] contract <u>within</u> <u>sixty days</u> after receipt of satisfactory proof of loss from the claimant."[54]    The Louisiana Supreme Court has held that § 22:1892 and § 22:1973 prohibit "virtually identical" conduct[55]—the obvious difference being the timing element—and are only applicable where the insurer's failure to pay is "arbitrary, capricious, or without probable cause."[56] In other words, it must be shown that the insurer's failure to pay was vexatious (i.e., not based on a good-faith defense).[57]    It is the insured's burden to prove that the insurer acted in an arbitrary and capricious manner.[58]

Here, North Light cites its expert's opinion stating "the damages pre-date the claim loss date and [P]olicy inception date" to argue that its failure to pay is based on a good

---

the newly enacted La. R.S. 22:1892(I).  Thus, even if the Court found that Louisiana's pre-amendment bad faith scheme did not apply, the outcome in the present case would be the same.

[52] La. R.S. § 22:1892(A)(1) (emphasis added).

[53] *Id.*, § 22:1892(B)(1).

[54] *Id.*, § 22:1973(B)(5).

[55] *Reed v. State Farm Mut. Auto Ins. Co.*, 857 So.2d 1012, 1020 (La. 2003).

[56] *Guillory v. Lee*, 16 So.3d 1104, 1126-27 (La. 2009).

[57] *See Thibodeaux v. Arvie*, 226 So.3d 1229, 1233 (La. App. 3rd Cir. 2017) ("[A] vexatious refusal to pay means unjustified, without reasonable or probable cause or excuse … describ[ing] an insurer whose willful refusal of a claim is not based on a good-faith defense.") (internal quotation marks omitted); *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 297-98 (5th Cir. 2009) (citing *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d 170, 174 (La. 2000) ("An insurer does not act arbitrarily and capriciously … when it withholds payments based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage.").

[58] *Stewart v. Calcasieu Parish Sch. Bd.*, 933 So.2d 797, 801 (La. App. 3rd Cir. 2006) ("The party claiming entitlement to penalties and attorney fees bears the burden of proving that the insurer had sufficient proof that payment on a claim was due as a basis for establishing that the insurer was arbitrary and capricious").

faith dispute as to the Policy's coverage such that its conduct was not arbitrary, capricious, or without probable cause, as a matter of law.[59]   Plaintiffs raise two arguments in opposition.  First, they contend a reasonable jury can conclude that North Light acted in bad faith when—the issue of causation notwithstanding—it failed to tender purportedly undisputed amounts after its building consultant, Dalvas Fuselier, prepared an estimate in May 2025 (the "Fuselier report"), identifying September 8, 2023 as the date of loss and calculating a replacement cost of $90,072.93.[60]   Second, Plaintiffs argue that North Light acted in bad faith when it denied additional coverage without a timely or adequate investigation,[61] delayed retaining an engineer for nearly a year,[62] disregarded its own underwriting determination reflecting no prior loss history,[63] and, relatedly, failed to reconcile internal claim-file admissions acknowledging that a weather event had occurred on the reported date of loss.[64]   Thus, Plaintiffs maintain that the general principle stating an insurer does not act in bad faith when it merely disputes a claim cannot be used to "insulate an insurer from liability where the reasonableness of its conduct is itself disputed."[65]

The Court acknowledges at the outset that whether an insurer's actions are arbitrary, capricious, or without probable cause, "is essentially a fact issue."[66]   For that reason, several federal courts, when applying Louisiana law, have cautioned against granting summary judgment where, as here, "a claim for bad faith penalties depends on

---

[59] Rec. Doc. 16-1. p. 10.
[60] Rec. Doc. 22, p. 14 (citing Rec. Doc. 22-4 (Exhibit C)).
[61] *Id.* at p. 15.
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] *Bell v. Steckler*, 285 So.3d 561, 570 (La. App. 5th Cir. 2019).

11

factual determinations concerning the reasonableness of the insurer's actions."[67] Nevertheless, Louisiana courts have found "summary judgment … to be appropriate when there is no evidence of an insurer's bad faith conduct,"[68] and where it is shown by the movant that "a valid reasonable dispute existed between the parties."[69]  That is the case here.

Plaintiffs' first argument relies on the assumption that the Fuselier report constituted satisfactory proof of loss, sufficient to trigger the applicable statutory time limits for payment under §§ 22:1892 and 22:1973, respectively.[70]  A "satisfactory proof of loss" is that which is sufficient to fully apprise an insurer of an insured's claim; in other words, when the insurer has adequate knowledge of loss.[71]  That said, "when there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability … failure to pay within the statutory time period is not arbitrary, capricious or without probable cause."[72]  The proof of loss asserted here is not at all satisfactory.  While Plaintiffs are correct that the estimate portion of the Fuselier report lists September 8, 2023, as the date of loss,[73] it is clear from the excerpt submitted in connection with the pending motion that the report never intended—and did not purport—to identify a cause of the claimed damages.  Indeed, as North Light points out,[74] the only opinion the Fuselier

---

[67] *Korndorffer v. USAA Cas. Ins. Co.*, 2023 WL 2351725, at *9 (E.D. La. Mar. 3, 2023) (quoting *Burrell v. Phillips*, 2021 WL 720635, at *3 (E.D. La. Feb. 24, 2021) (internal citation omitted)).

[68] *Bell*, 285 So.3d at 570.

[69] *Id.* at 572.

[70] *See Payton v. Progressive Sec. Ins. Co.*, 66 So.3d 1194, 1201 (La. App. 4th Cir. 2011) (citing *Boudreaux v. State Farm Mut. Auto. Ins. Co.*, 896 So.2d 230, 234 (La. App. 4th Cir. 2005) ("A satisfactory proof of loss is a necessary predicate to a showing that the insurer was arbitrary and capricious.").  Plaintiffs clearly portray the Fuselier report as the necessary predicate, stating North Light's "failure to tender … is the result of inaction in the face of [its] own valuation evidence."  Rec. Doc. 22, p. 14.

[71] *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1119 (La. 2008).

[72] *Id.* at 1114.

[73] Rec. Doc. 22-4, p. 1.

[74] Rec. Doc. 23-2, p. 11.

report adopts concerning causation, states: "that SDII did not attribute any damages to the 09/08/2023 DOL."[75]  This corresponds with North Light's represented purpose for the Fuselier report, which was to obtain a counter loss assessment in response to Plaintiffs' own Xactimate.[76]

Notably, the Fuselier report does nothing to dispel or otherwise resolve the reasonable and legitimate questions that arose regarding North Light's liability for the asserted Windstorm damages following the SDII report.  The Court therefore finds that it cannot be considered a "satisfactory proof of loss" for purposes of triggering a duty to pay undisputed amounts under either §§ 22:1892 or 22:1973. To be sure, Plaintiffs have presented no evidence to suggest that, as of May 2025, any amount could appropriately be considered undisputed such that the Fuselier report gave rise to an obligation for North Light to tender amounts due.  To the contrary, North Light has put forth sufficient evidence that, based on the facts and circumstances in its possession at the time, it harbored reasonable and legitimate doubts about its liability for the sued upon damages.[77]

Plaintiffs' attempt to avoid summary judgment of their bad faith claims based on North Light's general handling of their claims is no more availing.  It is true that, under La. R.S. § 22:1973, insurers have an affirmative duty to adjust claims fairly and promptly as part of their more generalized duties of good faith and dealing owed to insureds.[78]  Here,

---

[75] Rec. Doc. 16-4, p. 169.
[76] Rec. Doc. 23-2, p. 11.
[77] *Treigle v. State Farm Fire and Cas. Ins. Co.*, 2023 WL 3569828, at *5 (E.D. La. May 19, 2023) (finding that where the "evidence demonstrates that [insurer] had a reasonable basis to question whether the cause of the damage was covered under Plaintiff's policy … [insurer] did not act arbitrarily or capriciously in denying [] insurance claim, and summary judgment is appropriate on Plaintiff's claims for bad faith damages under La. Rev. Stat. § 22:1982 …."); *Stewart*, 933 So.2d at 801 ("when a reasonable disagreement exists between an insurer and an insured, it is not arbitrary and capricious or without probable cause on the part of the insurer to deny payment on the claim that is in dispute.").
[78] *Gautreaux v. Louisiana Farm Bureau Cas. Ins. Co.*, 280 So.3d 694, 702 (La. App. 3rd Cir. 2019).

13

the Court finds the record is absent of evidence showing that North Light failed to act accordingly.    Indeed, the evidence discloses nothing more than a garden-variety coverage dispute.

It is undisputed that North Light first inspected the Property on October 12, 2023, just ten days after receiving an initial claim for damages related to the Windstorm on October 2, 2023.[79]  The resulting estimate of damages was determined to fall below the Policy's $24,060 deductible.[80]  Plaintiffs contend, however, that Northlight failed to act in good faith when, after receiving a $149,584.93 estimate from Plaintiffs' retained contractor on December 19, 2023, it denied additional coverage the same day without supplemental inspection, retaining an engineer, or reconciling the estimate with its own findings.[81]    This is insufficient to show "bad faith"—a term Louisiana courts have interpreted to imply "a dishonest purpose or evil intent."[82]  To be sure, plaintiffs in a bad faith action assume a "great" burden.[83]  Even so, Plaintiffs cite no authority to support a finding of bad faith where, following a prompt inspection and estimate by its own contractor, an insurer decides to stand by a coverage determination that is at odds with a later-in-time estimate submitted by the insured.  While the margin between the two estimates is significant, North Light was entitled to rely on the qualifications and determinations of its chosen contractor—and forego further inspection or reconciliation— without subjecting itself to a charge of bad faith.[84]  To conclude otherwise would require

---

[79] Rec. Doc. 16-4, p.1 ¶¶ 5-6.

[80] *Id.* at ¶ 7.

[81] Rec. Doc. 22, p. 11.

[82] *Vaughn v. Franklin*, 785 So.2d 79, 86 (La. App. 1st Cir. 2001) (citing *Bond v. Broadway*, 607 So.2d 865, 867 (La. App. 2nd Cir. 1992), *writ denied* 612 So. 2d 88 (La. 1993)).

[83] *Lewis v. State Farm Ins. Co.*, 946 So.2d 708, 725 (La. App. 2d Cir. 2006).

[84] *See Jackson v. State Farm Fire & Cas. Co.*, 2010 WL 724108, at *6 (E.D. La. Feb. 22, 2010) (Finding no bad faith where "[i]n making the decision not to pay for additional damage, [insurer] relied on … its own assessment of damages that resulted from inspection of the premises.").

the Court to entertain "improbable inferences" and "unsupported speculation" of intent,[85] especially where Plaintiffs do not contest the reasonableness of North Light's reliance on the October 2023 assessment of its contractor.

Plaintiffs fare no better based on the timeliness of North Light's retention of an engineer to inspect the Property in August 2024—more than ten months after the loss was first reported. There is no dispute that, following its October and December 2024 coverage determinations, North Light received a March 12, 2026 letter from Plaintiffs' counsel representing that they were "in the process of retaining an engineer to render an opinion regarding structural damage" and that a proof of loss would be submitted "in the form of a contractor estimate."[86] North Light did not receive a proof of loss until July 18, 2024, when, without an accompanying engineer's opinion, Plaintiffs' counsel submitted the Superior Group Roofing & Design estimate claiming additional damage not originally inspected by North Light.[87] *Less than one month later*, on August 14, 2024, North Light's retained engineer, SDII, inspected the Property and generated a report, attributing the observed damage to Hurricane Ida—thereby concluding the Plaintiffs' asserted damages pre-date the inception of the Policy.[88]

In the present case, Plaintiffs have adduced no evidence indicating undue delay, bad faith, or dilatory motive in North Light's handling of their claim. Their contention that North Light "did not retain an engineer … [for] more than ten (10) months after the loss was reported and more than seven (7) months after receiving a detailed contractor

---

[85] *FMC Enters., L.L.C. v. Prytania-St. Mary Condos. Ass'n, Inc.*, 117 So.3d 217, 228 (La. App. 4th Cir. 2013) (internal citation omitted).
[86] Rec. Doc. 16-4, p. 2 ¶ 12.
[87] *Id.* at ¶¶ 13-14.
[88] *Id.* at ¶ 15.

estimate" ignores the important context of North Light's October and December 2024 coverage determinations and therefore provides no basis from which an evil intent or dishonest purpose (i.e., bad faith) can be inferred.[89]  It was not until July 2024 that North Light received Plaintiffs' renewed effort to establish coverage, to which they responded promptly by arranging to have SDII perform an inspection.  Much in the same way North Light was entitled to reasonably rely on that assessment to deny additional coverage,[90] it could likewise do so in deciding that internal documentation indicating (1) a weather event coincided with the reported loss date,[91] and (2) no prior loss history at the Property[92] did not require a different determination.[93]  This is especially true where, as here, the documents cited by Plaintiff were prepared at the claim adjustment and policy application stages, respectively, and do not purport to attribute the asserted damages to any specific event.  And while North Light may end up being wrong—which the forthcoming trial on Plaintiffs' contract claim will ultimately decide—there is no evidence to indicate that it

---

[89] Rec. Doc. 22, p. 11.

[90] *See Jackson*, 2010 WL 724108, at *6.

[91] Rec. Doc. 22-3, p. 22 (Claim Note).

[92] *Id.* at 22, 26 (Claim Note and Underwriting Application).

[93] North Light could likewise rely on the assessment of its retained engineer to disregard Plaintiffs' subsequently given sworn testimony describing the real-time water intrusion during the September 8, 2023 storm.  As Plaintiffs' opposition memorandum points out: "Defendant's experts, internal claim file, and litigation adjuster's affidavit collectively confirm that causation, scope of loss, [and] claim value … remain genuinely disputed." Rec. Doc. 22, p. 6.  Yet, Plaintiffs ask the Court to allow their bad faith claim to proceed where the evidence clearly shows that North Light, when confronted with the above-described information—which was undoubtedly muddied by Plaintiffs' own submissions throughout the coverage dispute—simply made the determination it believed most reasonable and proceeded accordingly.  Insurers are entitled to plant their flag in this manner, so long as it is done in good faith*.  See N.Y. Marine and Gen. Ins. Co. v. McDermott Int'l, Inc.*, 2005 WL 1400450, at *5 (E.D. La. June 1, 2005) ("When an insurer has legitimate doubts about coverage for a particular claim, the insurer has the right to litigate such a questionable claim without being subjected to damages and penalties.").  Plaintiffs have produced no evidence to the contrary.  Moreover, it would be untenable for the Court to conclude that the record evidence is sufficient to support a genuine issue of material fact over the cause of the sued-upon damages, but insufficient for North Light to have harbored doubts over the same during the claim handling process—indeed, Plaintiffs set forth the very sources on which North Light could have relied in justifying those doubts.

acted unreasonably in handling Plaintiffs' claim, let alone with the invidiousness needed for finding bad faith.[94]

On this record, the Court finds that Plaintiffs' alleged instances of bad faith instead reveal an insurance coverage dispute wherein no evidence has been produced to prove bad faith or unreasonableness on the part of North Light. "The only reason [then] to deny summary judgment under the facts of this case would be a rule that bad faith determinations under La. R.S. §§ 22:1892 and 22:1973 cannot be made on summary judgment. As there is no such rule, and where the facts and evidence strongly militate in favor of the insurer, the Court finds there is no genuine dispute as to the material fact of bad faith and that [North Light] is entitled to judgment as a matter of law."[95]

### D. Claims for Content Damage and Additional Living Expenses

North Light lastly contends that Plaintiffs have abandoned their claims for additional living expenses ("ALE") and damage to personal property ("Contents").[96] Underlying its argument is a glaring inconsistency between the representations in Plaintiffs' pleadings concerning these claims and their subsequent responses to discovery requests regarding the same. More specifically, Plaintiffs alleged that, due to North Light's breach of contract and bad faith adjusting, they sustained damages including "loss of use and/or additional living expenses" and "personal property damage."[97] During the

---

[94] *Kodrin v State Farm Fire & Cas. Co.*, 314 Fed. Appx. 671, 679 (5th Cir. 2009) (citing *Icklone v. Travelers Indem. Co.*, 345 So. 2d 202, 203 (La. App. 3d Cir. 1977) ("An insurer cannot be held to have acted in bad faith simply because it eventually turns out to be wrong about the cause of the damage."); *Vaughn*, 785 So.2d at 86 ("Bad faith means more than mere bad judgment or negligence … it is a willful and unreasoning action, without consideration for the facts and circumstances presented").

[95] *Carson v. Allstate Indem. Ins.*, 2012 WL 645889, at *3 (M.D. La. Feb. 28, 2012).

[96] Rec. Doc. 16-1, pp. 7-8; Rec. Doc. 23-2, p. 12-13.

[97] Rec. Doc. 1-1, ¶ 43

discovery process, however, Plaintiffs provided the following responses to North Light's requests for production:

- "Upon information and belief, Plaintiffs are not making a [C]ontents claim;"[98] and

- "Upon information and belief, Plaintiffs are not making an ALE claim unless and until the period of restoration begins."[99]

"The Fifth Circuit has held that a claim … may be abandoned (or waived) when a party fails to pursue it beyond their initial pleading."[100] Accordingly, courts have found that a plaintiff clearly abandons a claim when she announces that she no longer intends to pursue it during the discovery process.[101] That is the case here; notwithstanding the allegations in their complaint, Plaintiffs have clearly asserted they are neither pursuing an ALE or Contents claim in the present action; indeed they have presented no evidence of either in opposing the present *Motion*. Moreover, Plaintiffs do not challenge, or make any attempt to reconcile, the above-described inconsistencies in their *Opposition* memorandum. Notably, "[a] plaintiff also abandons a claim when she fails to defend it in response to a … summary judgment motion."[102] Plaintiffs have therefore abandoned or waived the ALE and Contents claims included in their complaint and are precluded from seeking damages therefor.

---

[98] Rec. Doc. 16-3, p. 18.
[99] *Id.*
[100] *Williams v. Petroleum*, 2021 WL 649786, at *5 (M.D. La. Feb. 3, 2021), *adopted by* 2021 WL 641543 (M.D. La. Feb. 18, 2021) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).
[101] *See Moore v. United Parcel Serv.*, 2004 WL 2339792, at *11 (N.D. Tex. Oct. 15, 2004); *Williams*, 2021 WL 649786, at *6 ("Here, Plaintiff not only testified that she was no longer claiming race discrimination … she likewise failed to defend her race discrimination claim in response to Defendant's Motion for Summary Judgment. And so, Plaintiff has abandoned her claim for race discrimination—whether at her deposition or in response to the instant Motion.").
[102] *Williams v. Crawford & Co.*, 2021 WL 6065824, at *13 (N.D. Tex. Nov. 24, 2021) (citing *Tex. Capital Bank N.A. v. Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017); Arias v. Wells Fargo Bank, N.A., 2019 WL 2514998, at *7 (N.D. Tex. June 18, 2019) ("When a plaintiff fails to defend a claim in response to a … summary judgment motion, the claim is deemed abandoned.").

## IV.    CONCLUSION

For the foregoing reasons, North Light's *Motion for Summary Judgment*[103] is GRANTED with respect to Plaintiffs' claim for bad faith damages and penalties, and DENIED with respect to Plaintiffs' claim for breach of contract. Plaintiffs' bad faith claim is hereby DISMISSED with prejudice.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 2nd day of _____June_____, 2026.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[103] Rec. Doc. 16.